Oliver LANNING, Plaintiff-Appellant,

v.

O. E. SERWOLD, Jr., et al., Defendants-Appellees.

No. 71–1934.

United States Court of Appeals,
Ninth Circuit.

Feb. 12, 1973.

William D. Cameron (argued), of Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for plaintiff-appellant.

J. Paul Coie (argued), John L. Weinberg, of Perkins, Coie, Stone, Olsen & Williams, Robert W. Thomas, of Lane, Powell, Moss & Miller, Seattle, Wash., for defendants-appellees.

Before CHOY and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

CHOY, Circuit Judge:

██ ██ The sole issue presented for our disposition is whether the district court properly concluded that the complaint[1] brought by Lanning should be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim. We affirm in part and reverse in part, and remand for trial.

Lanning is seeking damages on four separate claims. The first claim is predicated on alleged violations of Section 10(b), Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[2] and SEC Rule 10

---

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

1. The dismissal was of the complaint, not the action. Normally this is not an appealable order. But we find that there are special circumstances which permit us to treat the order as final. It appears that the action could not have been saved by any amendment of the complaint which Lanning could reasonably be expected to make. Ruby v. Secretary of the Navy, 365 F.2d 385 (9th Cir. 1966), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967).

2. In pertinent part, Section 10(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*  \*  \*  \*  \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as

b–5, 17 C.F.R. § 240.10b–5.[3] The remaining three claims are state pendent claims based on common law fraud, violations of Washington securities law, and tortious interference with a contractual relationship. Since there is no independent federal jurisdictional basis for the three state claims, these claims were dismissed when the federal claim was found wanting. We focus our attention on the federal claim.

Lanning's complaint asserts two separate Rule 10b–5 violations. First, his efforts to buy 500 unidentified shares of Poulsbo Rural Telephone Association (PRTA) stock for $15 a share from minority shareholders were wrongfully frustrated by a deceptive letter mailed by defendant Serwold, President of PRTA, to all PRTA stockholders. The letter falsely told of discussions with persons interested in the purchase of or merger with the company, and of the stock having a book value of $114.55 per share. Accordingly, Lanning alleges that his cost for the shares would be $300 to $600 per share instead of $15, so he demands judgment for $142,500 or an order requiring Serwold and PRTA to sell him 500 shares at $15 per share. Second, he purchased 136 shares of PRTA from two ladies at $15 per share and presented the certificates with the proper endorsements to PRTA so that they could register the transfer. Instead of registering the transfer Serwold falsely informed the ladies by telephone that the stock's book value was $115 per share, that two firms were negotiating to buy PRTA for at least $300 per share and that he hated to see old stockholders

"lose out." He advised them that two attorneys, defendants Niemeier and Green, would help them defeat the sale and recover the 136 shares. Niemeier knowingly confirmed the misrepresentations and referred the ladies to a Seattle attorney who filed an action for the ladies to rescind the sale and to enjoin PRTA from transferring record ownership of the 136 shares to Lanning. Green falsely testified as to the fictitious negotiations. Lanning defeated this suit, but in doing so he incurred $3,897.64 in costs and expenses.

## THE 500 SHARES CLAIM

■ We agree with the district court that Lanning lacked the requisite standing as to the 500 shares he claimed he could not buy at $15 per share because of Serwold's fraudulent misrepresentations. Since Lanning had no relationship with anyone either as a purchaser or seller of the securities involved with the alleged rule violation, no claim for relief cognizable under Section 10(b) was presented. Mt. Clemens Industries, Inc. v. Bell, 464 F.2d 339 (9th Cir. 1972).

## THE 136 SHARES CLAIM

■ We find here the requisite prior contractual relationship between Lanning and the two ladies who sold him the 136 shares. But appellees contend as the district court ruled, that any fraud occurred after the sale had been consummated and that the fraud did not impair the value of the securities purchased by Lanning so that the claim is outside the

the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

3. The rule provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(1) To employ any device, scheme or artifice to defraud,
(2) To make any untrue statement of a material fact or to omit to state a material fact necessary. in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

ambit of federal securities law. We do not agree.

Lanning was a purchaser of stocks and the wrong done to him was in connection with this purchase. "Section 10(b) must be read flexibly, not technically and restrictively. Since there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under § 10(b), whatever might be available as a remedy under state law." Supt. of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L. Ed.2d 128 (1971). In Bankers Life, *supra,* the Supreme Court rejected the argument that the fraud must affect the investment value of the securities. *Accord,* A. T. Brod & Co. v. Perlow, 375 F.2d 393, 396–397 (2nd Cir. 1967). Here, in essence, Lanning had to pay nearly $4,000 more for the 136 shares because of Serwold's misrepresentations.

There is no requirement in either the statute or the rule that the fraud must occur prior to the consummation of the sale. Both condemn fraud in connection with a sale. Here the fraud was directly related to the sale of the securities.

### PENDENT CLAIMS

The district court should assume jurisdiction over the pendent state claims relating to the purchase of 136 shares.

However, any state claims relating to the attempted purchase of the 500 shares should be dismissed because there is no federal jurisdictional basis for these claims. Since the federal claim relating to this aspect of the case was dismissed prior to trial, these pendent claims should also be dismissed. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966). Moreover, these claims cannot be considered as being ancillary to any action based on the purchase of the 136 shares. The claims do not arise out of the same transaction or occurrence, nor are they auxiliary,

accessorial or subordinate to the purchase of the 500 shares. See L & E Co. v. United States of America, 351 F.2d 880 (9th Cir. 1965); Glens Falls Indemnity Co. v. United States ex rel. Westinghouse Electric Supply Co., 229 F.2d 370 (9th Cir. 1955).

Affirmed in part; reversed in part; and remanded.