**Asa L. LEWELLING, Plaintiff-Appellee,**

v.

**FIRST CALIFORNIA COMPANY, a California Corporation (Appellant), Harold F. Smither and M. J. Coen (Appellant), Defendants-Appellants.**

**No. 75–2759.**

United States Court of Appeals, Ninth Circuit.

Nov. 21, 1977.

---

John R. Faust, Jr. (argued), Portland, Or., for defendants-appellants.

Clifford N. Carlsen, Jr. (argued), Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for plaintiff-appellee.

Before DUNIWAY, ELY and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This controversy arises out of a scheme to enable insiders to bail out of various corporations which were failing. Plaintiff, Asa L. Lewelling, brought a private suit for fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); SEC Rule 10b–5, 17 C.F.R. § 240.10b–5; and the Oregon securities act and common law.[1] From the adverse judgment of the district court, defendants First California Company (FCC), a brokerage firm, and its principal owner, M. J. Coen, appeal. We affirm.

Lewelling, a private investor, dealt with FCC through an employee, Harold F. Smither.[2] In the last two years of their relationship, Smither handled Lewelling's account by purchasing securities without his knowledge, then forwarding confirmation slips regarding the transactions. When Lewelling received a confirmation slip, he would immediately telephone Smither for

---

**1.** In his complaint, Lewelling also alleged a violation of SEC Rule 15c1–2, 17 C.F.R. § 240.-15c1–2, promulgated under 15 U.S.C. § 78o (c)(1) (registration and regulation of brokers and dealers). *See, e. g., Davis v. Avco Corp.,* 371 F.Supp. 782, 789 (N.D.Ohio 1974). *See also Jordan Bldg. Corp. v. Doyle, O'Connor & Co.,* 401 F.2d 47, 50–51 (7th Cir. 1968). This claim, however, was pursued neither at trial nor on appeal. Therefore, it is not now properly before us. *See Santa Clara Valley Dist. Co. v. Pabst Brewing Co.,* 556 F.2d 942, 946 (9th Cir. 1977).

**2.** Smither was also named as a defendant below. He was found liable only on the Oregon securities law counts and has not appealed. *See* note 6 *infra.*

an explanation. Smither would then present justifications for his unilateral decision to purchase. Lewelling never tried to overturn a purchase. There was no written agreement between Lewelling and Smither.

The securities in question had been owned by Coen or C. Arnholdt Smith, or sources related to them, and were passed through a series of brokerage houses controlled by them before coming to FCC and then to Lewelling. The trial court found that the several transfers were all part of a scheme to "launder" the securities in order to conceal the underlying "bail outs" by the insiders. The gravamen of Lewelling's complaint was that, in selling him the securities, defendants failed to disclose the insider source of the securities or the sellers' reasons for disposing of them.

### Materiality

■ The materiality of omissions is measured by an objective standard: whether a fact's " 'existence or nonexistence is a matter to which a reasonable man *would* attach importance in determining his choice of action in the transaction in question.' " *Northwest Paper Corp. v. Thompson*, 421 F.2d 137, 138 (9th Cir. 1970), *quoting* Restatement of Torts § 538(2)(a) (1938) (emphasis supplied).[3] Because of the trial court's finding that the sales were part of a larger plot to unload "bad" stock, its conclusion that the omissions were material is certainly not clearly erroneous. Fed.R. Civ.P. 52(a). *See Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 463 (9th Cir. 1977); *Butler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 528 F.2d 1390, 1391 (9th Cir. 1975).

---

**3.** There has been much discussion as to whether the proper test for materiality under Rule 10b–5 is "would" or "might." *See, e. g., Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489 & n. 6 (9th Cir. 1974). Many thought that the Supreme Court had adopted the "might" test in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Recently, however, the Court explicitly disavowed such a reading of *Affiliated Ute. See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 447 n. 9, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In short, the Supreme Court has yet to announce a precise test for materiality under

Defendants argue, however, that there was insufficient evidence to warrant the trial court's findings that insiders were in fact bailing out of failing corporations. We need not reach their contentions, however, for the district court apparently felt that the routing of the securities through the various brokerage firms in which Coen had an interest was itself a material fact which should have been disclosed. The *reason* for this "laundering" attempt may not be as significant to an investor as the fact that the investment house with which he was dealing was engaging in the practice.

### "In Connection With"

■ Defendants next contend that the purported omissions did not occur "in connection with" the purchase or sale of a security as required by Rule 10b–5 because Lewelling and Smither communicated only *after* the confirmation slips had been sent. They argue that Rule 10b–5 requires both that the fraud occur in connection with the transaction, *see Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), and that the plaintiff be a purchaser or seller, *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). If the purchases were consummated before the fraudulent nondisclosures, they reason, Lewelling is merely an "aborted seller" who was induced to retain the securities through the defendants' fraud, rather than to purchase them in the first instance, and is therefore barred from recovery under the teachings of *Blue Chip, supra* at 737–38, 95 S.Ct. 1917.[4]

---

Rule 10b–5. In the Ninth Circuit, the *Northwest Paper* formulation still controls. *See Robinson v. Cupples Container Co.*, 513 F.2d 1274, 1277 (9th Cir. 1975).

**4.** In *Lanning v. Serwold*, 474 F.2d 716, 718–19 (9th Cir. 1973), cited by Lewelling, we stated that neither § 10(b) nor Rule 10b–5 required that the fraud occur *before* the transaction. In accordance with this pronouncement, the trial court below ruled that there is no "mechanical test such as the clock or the calendar or the metronome" that governs the disposition.

Precisely when the transactions were finalized is a question of intent for the finder of fact. *See Reliance Finance Corp. v. Miller*, 557 F.2d 674, 677–78 (9th Cir. 1977); *Smith v. Onyx Oil & Chem. Co.*, 218 F.2d 104, 108 (3d Cir. 1955). The trial court found that Lewelling had the power to reject any of the purchases and that no transaction was complete until Lewelling had had the opportunity to exercise his veto and had failed to do so. In deciding whether or not to call off the purchases, Lewelling was guided only by the information given him by Smither. In this respect, the omissions had a direct effect on the disposition of the transactions. Thus, the failures to disclose did not come after the sales had been finalized, and Lewelling therefore cannot be characterized as an aborted seller.

While the trial court's analysis reaches the correct result, we feel that there is a more direct route to the same conclusion. Rule 10b–5 requires that those in possession of material information which is not generally available to the other party disclose before selling, or refrain from dealing. *See* L. Loss, Securities Regulation 3572–73, 3588–90 (Supp. ed. 1969); 2 A. Bromberg, Securities Law: Fraud § 7.4(6)(a) (1975). Complete silence in the face of this duty is actionable. *See List v. Fashion Park, Inc.*, 340 F.2d 457, 461–62 (2d Cir.), *cert. denied sub nom. List v. Lerner*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); Loss, *supra* at 3575–76.[5] And Rule 10b–5 covers totally impersonal security transactions—such as those consummated over the exchanges—as well as more personal face-to-face or telephone encounters. *See id.* at 1456 (2d ed. 1961); *id.* at 3573 (Supp. ed. 1969). *See*

*generally United States v. Charnay*, 537 F.2d 341, 348–50 (9th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 528, 50 L.Ed.2d 610 (1976); *Fridrich v. Bradford*, 542 F.2d 307, 318 (6th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977); *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 32 & n. 49 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968); *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

It is established that the defendants failed to disclose the insider source of the securities and the sellers' reasons for disposing of them. We feel that the trial court's concern about the exact date on which the purchases were completed is unnecessary when analyzing the defendants' omission because the facts which underlie the fraud occurred well before either the "purchase" by Smither or the "ratification" by Lewelling. If the transaction were complete when Smither "purchased" the securities, the omission of the material information would be actionable. Even if Smither lacked the ability to complete the transaction and only Lewelling's "ratification" made it complete, the omission would still be actionable. *In either event, the transaction was complete before disclosure of the material information,* making the omission precisely the type of fraudulent practice which the securities laws guard against.

Therefore, since it is clear from the trial court's findings that the entire series of transactions with Lewelling was undertaken with the material information al-

---

Our holding in *Lanning* remains unaffected by the Supreme Court's adoption of the purchaser-seller rule in *Blue Chip*, for at the time *Lanning* was decided that rule was already the law of this circuit, *see Mount Clemens Indus., Inc. v. Bell*, 464 F.2d 339, 341–44 (9th Cir. 1972), and *Lanning* was decided with a full awareness of that fact, *see* 474 F.2d at 718. Defendants correctly note, however, that the "fraud" in *Lanning* went to a collateral, but directly related matter, and not to the inducement for the plaintiff's purchases.

**5.** Failure to note this rule may account for defendants' confused argument that an omis-

sion is not actionable unless it makes a statement misleading. Their contention is an attempt to contort the provision of Rule 10b–5—which makes it unlawful to "omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" —to suit their own purposes.

In any event, the district court did find that various representations had previously been made by defendants and that they violated Rule 10b–5 in not making disclosures which were necessary in order "to make [those] statements . . . not misleading."

ready in hand, defendants violated Rule 10b–5 in not disclosing that information to Lewelling before selling to him.[6]

### Pendent State Claims

█ Finally, Lewelling also brought a pendent state claim under the Oregon securities law, asserting that defendants improperly sold him unregistered stock in Olix Industries in violation of Or.Rev.Stat. § 59.-055. Defendants appeal the trial court's finding that the stock sales were not exempt from the Oregon registration provisions.

Under Oregon law, the burden is on defendants to show that such sales were exempt from registration. *See* Or.Rev.Stat. § 59.275; *Tarsia v. Nick's Laundry & Linen Supply Co.*, 239 Or. 562, 566, 399 P.2d 28, 30 (1965). In order to do so, they must demonstrate, among other things, that the prices at which they sold the stock were "reasonably related to the current market price[s] thereof at the time of [the] sale[s]. . . ." Or.Rev.Stat. § 59.035(9)(a). The trial court found that defendants did not meet this burden. Once again, on the basis of the

record before us, we cannot say that the decision of the trial court was clearly erroneous.

AFFIRMED.

ELY, Circuit Judge (concurring):

I concur in the result reached by my Brothers.

I am inclined to the view, however, that the majority needlessly complicates the analysis by concentrating on when the transactions in question were completed in an effort to deal with the appellants' argument that Lewelling was no more than an "aborted seller."

The District Court found that Lewelling had the power to reject any of the "purchases" made by Smither and that Lewelling's subsequent oral approvals by telephone constituted "ratifications." This, I believe, comports with the realities of the arrangement. Accordingly, I would hold that Smither's representations and failure to reveal the insider source of the securities were "connected" with the various purchases, despite the fact that such events post-

---

**6.** Although the point was not raised by defendants here, it should be noted that, subsequent to the judgment below, the Supreme Court announced its decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). There, the Court construed the word "manipulative," as used in Rule 10b–5, to mean something more than mere negligence, connoting rather "intentional or willful conduct designed to deceive or defraud investors." 425 U.S. at 199, 96 S.Ct. at 1384. This requirement of scienter forecloses the possibility of actionable negligence which previously existed under this Circuit's "flexible duty standard," expounded in *White v. Abrams*, 495 F.2d 724, 730–36 (9th Cir. 1974), and duly applied by the trial court in this case. *See Hochfelder*, 425 U.S. at 193–94 n. 12, 96 S.Ct. 1375; *Reliance Finance Corp. v. Miller*, 557 F.2d 674, 677–78 (9th Cir. 1977); *Arthur Young & Co. v. United States*, 549 F.2d 686, 695–96 (9th Cir. 1977).

The appearance of this new test in no way requires a reversal or remand here. From the record before us, *see Reliance Finance, supra* at 680; *Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d 823, 828 (9th Cir.), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969); *Seligson v. Roth*, 402 F.2d 883, 887 (9th Cir. 1968), it is clear that, although the district court found Rule 10b–5 liability by ap-

plying a duty of extreme care, it considered defendants' omissions deliberate. The district court expressly so held as to the common-law fraud counts. And, in its findings of fact on the securities laws counts, it used such terms as "scheme," "launder," and "bail out." These characterizations so clearly connote intentional action that there is no need for us to consider whether the requirement of scienter can be met through a finding of recklessness, a question left open in *Hochfelder* itself, 425 U.S. at 193–94 n. 12, 96 S.Ct. 1375. *See, e. g., Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1039–40 (7th Cir. 1977); *Holdsworth v. Strong*, 545 F.2d 687, 693 (10th Cir. 1976) (en banc), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977). *See also Arthur Young & Co., supra.*

Defendant Smither, who has not appealed, was found by the trial court not to have breached the standard of extreme care because he was unaware of the scheme. *A fortiori*, there can be no liability as to him under the tougher standard of *Hochfelder*. *See Reliance Finance*, 557 F.2d at 677–78. Lewelling's only basis for recovery against Smither was held to be the fact that Smither had sold him stock without complying with Oregon's registration requirements.

dated, in a calendar sense, the "purchases" by Smither. This would obviate the need to engage in unnecessary and artificial attempts to define when the "purchase transactions" were consummated. Moreover, I submit that, unlike the majority's rather circuitous reasoning, my approach, while simpler, is the truest "direct route" to the appropriate result.