617 F.2d 1335
 Fed. Sec. L. Rep. P 97,281
The PEGASUS FUND, INC., Vanderbilt Mutual Fund, Inc., and
Pegasus Income & Capital Fund, Inc., Plaintiffs-Appellants,
v.
Ronald J. LARANETA et al., and Federated Investors, Inc., et
al., Defendants,
and
Arthur Young & Company, Defendant-Appellee.
 No. 77-3450.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 14, 1980.
Rehearing Denied May 20, 1980.
 
 Arthur N. Greenberg, Greenberg & Glusker, Los Angeles, Cal., for plaintiffs-appellants.
 Carl D. Liggio, Arthur Young & Co., New York City (argued), for defendant-appellee; Mitchell L. Lathrop, MacDonald, Halsted & Laybourne, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and TANG, Circuit Judges, and JAMESON*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The plaintiffs-appellants are three mutual funds that charge the defendant-appellee, an accounting firm, with recklessly performing an audit of the funds' financial statements in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b-5, 17 C.F.R. § 240.10b-5. This appeal is taken from summary judgment on pleadings that alleged only a rule 10b-5 violation, although a memorandum submitted in opposition to the motion for summary judgment alluded to the possibility of a private claim under section 34(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-33(b). The appellee has moved this court to dismiss a portion of the appeal that challenges the allegedly implicit summary judgment on the section 34(b) claim and to strike the corresponding part of the plaintiffs-appellants' brief. By previous order of this court the motion is to be considered with the merits of the appeal. Our jurisdiction rests on 28 U.S.C. § 1291. We grant the appellee's motion to dismiss the section 34(b) portion of the appeal and affirm the summary judgment.
 
 I.
 FACTUAL SETTING
 
 2
 The appellants are investment companies, or mutual funds, registered in accordance with the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq. As a result of several transactions during 1973, each mutual fund bought a restricted debenture of Burreson & Co., Inc., secured by deeds of trust on realty whose value exceeded the face value of the debentures. One of the appellants, Pegasus Income & Capital Fund, Inc. (PIC), also purchased an Oh Boy! Industries, Inc. restricted debenture and a block of its convertible preferred stock. Since none of the securities were traded on any exchange and all were restricted, the directors of the funds had a duty, under 15 U.S.C. § 80a-2(a)(41) and 17 C.F.R. § 270.2a-4(a)(1), to value them. Each board met and valued the debentures at cost, which was also the face value of the securities. PIC valued its Oh Boy! Industries preferred stock at 95% of face value in view of the acknowledged weakness of the issuer.
 
 
 3
 As required by 15 U.S.C. § 80a-29(e), the directors of the mutual funds made arrangements for an audit of their financial statements. The appellee Arthur Young was the accounting firm chosen for the task. The mutual funds gave Arthur Young copies of various documents from their files, including:
 
 
 4
 (a) the Burreson & Co. and Oh Boy! Industries securities, the latter of which showed on its face an interest rate of 111/2%;
 
 
 5
 (b) a preliminary draft of a Burreson & Co. financial statement as of June 30, 1973 as to which the company's auditor had disclaimed any opinion;
 
 
 6
 (c) an audited financial statement of Oh Boy! Industries as of May 31, 1973 as to which the auditor had expressed an unqualified opinion;
 
 
 7
 (d) security agreements underlying the Burreson & Co. debentures, listing trust deed collateral.
 
 
 8
 Arthur Young certified the appellants' financial statements without qualification, stating in part: "We have examined the accompanying (financial statements) . . . . Our examination was made in accordance with generally accepted auditing standards . . . (and) . . . the (mutual funds') statements . . . present fairly the net assets of (the mutual funds) at December 31, 1973 . . . in conformity with generally accepted accounting principles applied on a consistent basis." By that date, however, the appellants allege that the Burreson and Oh Boy! securities were practically worthless.
 
 
 9
 After receiving the audit opinion, the mutual funds bought, on the recommendation of their investment advisors, securities issued by Commercial Petro-Gas, Inc. (CPG) and North American Credit Corp. (NACC), described in the mutual funds' pleadings as Burreson & Co. affiliates. Arthur Young has made the uncontroverted allegation that it was unaware of any connection between CPG, NACC and Burreson & Co. Interlocking directorates permitted some of the mutual funds' directors to defraud the funds by channeling the investment capital of the funds into corporations the directors owned or controlled. The mutual funds do not contend that Arthur Young was a participant in or beneficiary of these schemes.
 
 
 10
 An alleged basic flaw in the audit, which the mutual funds assert was recklessly done, was Arthur Young's failure to advise the mutual funds that the debenture collateral consisted not of first deeds of trust but of "all-inclusive" deeds of trust, which the funds say represent junior security interests. Arthur Young maintains that all-inclusive deeds of trust can represent first or second mortgages. The partner of Arthur Young responsible for the audit testified in related SEC proceedings that he did "know what (first deeds of trust) are." While the accounting firm inspected the restricted securities in the custody of California Bankers Trust Co. (CBT), the custodian of the mutual funds' assets, it accepted CBT's written and oral assertions that the related collateral documents were first deeds of trust.
 
 
 11
 The mutual funds note several other warning details that they allege a proper audit would have revealed. Some of these concern the Burreson debentures, and others concern the Oh Boy! debentures and convertible preferred shares. The following allegations belong to the first group:
 
 
 12
 Arthur Young's work papers for the audit disclosed that Burreson & Co. had an accumulated net worth deficit of over six million dollars and was delinquent in interest and principal payments on certain trust deed notes in the amount of $370,000 as of April 30, 1973. These notes were secured by the same realty that secured the plaintiffs' debentures, and represented a superior claim to that collateral. The work papers reflect that Burreson had been and was still running at a loss as of the date of the audit opinion. Financial statements included in the work papers revealed that Burreson had been a party charged in cease and desist orders and consent decrees in five securities violation actions brought in 1972 and 1973 by federal and California regulatory agencies. The work papers show that the face value of the trust deed notes securing appellant Vanderbilt Mutual Fund's Burreson debenture was less than the outstanding principal balance of the debenture. By December 31, 1973 Burreson had sold more than one-third of the trust deed note collateral to another defendant in this case, Sackman-Gilliland Corp., without the mutual funds' consent. Arthur Young, it is argued, would have discovered the wrongful sale of the missing notes if it had attempted to inspect them instead of relying on the word of the mutual funds' custodian.
 
 
 13
 The allegations relating to the Oh Boy! Industries' securities are these:
 
 
 14
 Arthur Young's work papers show that it knew Oh Boy! Industries had an operating deficit of about $500,000 and a retained earnings deficit of almost $1,257,000 for 1973. The Oh Boy! debenture fixed a usurious interest rate under California law 111/2%, which it bore on its face. The president of Oh Boy! Industries was also a director of each of the funds. The funds contend that these facts should have caused Arthur Young to qualify its opinion with regard to the Pegasus Income & Capital Investment Fund, Inc. financial statements, refuse certification, or seek a written opinion of counsel as to the legality of the purchase of the debenture.
 
 
 15
 The persons responsible for the fraudulent scheme were officer-directors of the mutual funds. Several have been convicted of conspiracy and violations of the federal securities laws. At least one disinterested director on the boards of all three mutual funds professes that he relied on the audit in approving the continued use of investment managers controlled by directors involved in the fraud.
 
 
 16
 Notwithstanding these allegations and assertions by the mutual funds, the district court on the basis of the record before it found that the following facts, inter alia, were not in genuine dispute:
 
 
 17
 11. Arthur Young did not make any statement to the plaintiffs, either in its audit opinion respecting each Fund or during the course of the respective audits, regarding the legality of PIC Fund's purchase of Oh Boy! securities.
 
 
 18
 12. Arthur Young did not make any statement to plaintiffs, at any time herein, either in its audit opinion with respect to each Fund or during the course of each audit, that the value of the Burreson debentures as of December 31, 1973 were equal to their face value.
 
 
 19
 13. Arthur Young did not make any statement to the plaintiffs at any time herein, either in the audit opinions respecting each Fund or in the course of each respective audit, that the value of the Oh Boy! securities as of December 31, 1973 was equal to $872,500.
 
 
 20
 14. At no time during the course of its audit of the financial statements of each of the respective Funds did Arthur Young know that the Funds were considering the purchase of securities issued by either North American Credit Corporation ("NACC") or Commercial Petro-Gas ("CPG"). Arthur Young only learned of such purchases after the Funds had consummated the acquisitions.
 
 
 21
 15. At no time during the course of its audit of each of the respective Funds, nor at any time prior to the commencement of the investigation of other defendants herein by the Securities and Exchange Commission in July 1974 did Arthur Young know that either NACC or CPG were affiliated in any manner with Burreson. Arthur Young learned for the first time in January, 1977 that CPG's former name had been Burreson Petro-Gas and that NACC's former name had been Burreson Investment Co., Inc., and that the names of CPG and NACC were changed in January, 1974 just prior to the first of the Funds' subsequent purchases of securities of the newly named companies.
 
 
 22
 16. During the course of its audit of each of the respective Funds, personnel of Arthur Young were advised by Ronald J. Laraneta, Chairman of the Board of Directors of each plaintiff, Michael E. Long, President of each plaintiff, and Joseph J. Laraneta, a member of the Board of Directors and Executive Vice President and Treasurer of each Fund, that first trust deeds on real property secured the Burreson debentures purchased by plaintiffs in 1973.
 
 
 23
 17. By letter dated January 31, 1974 the custodian of assets of each of the Funds, California Bankers Trust Company ("CBT"), acting pursuant to the request of the Funds, confirmed in writing to Arthur Young through the Vice President of CBT, Fred J. Straeter, that CBT had in its possession first trust deeds as collateral for the Burreson debentures owned by plaintiffs. Shortly thereafter, Arthur Young personnel met and discussed the subject confirmation letter, including the collateral balances as confirmed to Arthur Young by CBT, with Joseph J. Laraneta, the then Executive Vice President and Treasurer of each Fund.
 
 
 24
 18. During the course of its 1973 audits of the Funds Arthur Young knew of no inadequacies in the internal controls of CBT.
 
 
 25
 19. During 1973 Pietro Vitale was a member of the Board of Directors of both Pegasus and Vanderbilt. Both such Funds knew that Mr. Vitale was also President of Oh Boy!, in that Mr. Vitale was so identified in a Notice of Annual Meeting of Shareholders dated March 19, 1973 issued respectively for Pegasus and Vanderbilt. Mr. Vitale was also so identified and described in Vanderbilt's Semi-Annual Report dated June 30, 1973, Third Quarter Report dated September 30, 1973, and its Annual Report dated December 31, 1973. Similarly, PIC Fund was aware that Pietro Vitale was the President of Oh Boy! in that the Oh Boy! financial statements in the possession of PIC Fund during the year 1973, and which were provided to Arthur Young by the Funds, so identify Mr. Vitale. Moreover, the following individuals were members of the Board of Directors of PIC Fund in 1973:
 
 Ronald J. Laraneta Michael E. Long
 Miller H. Hurt Joseph J. Laraneta
 Jack H. MacDonald Mel M. Barton
 Roy F. McNeill John L. Moore
 John E. Nevins, Jr. Edward O. Stevenson
 
 26
 Each of the members of the Board of Directors of PIC Fund was also a member of either or both of the Board of Directors of Pegasus and Vanderbilt in 1973 along with Mr. Vitale.
 
 
 27
 20. In January, 1974, Arthur Young physically inspected and counted each Burreson debenture and the Oh Boy! securities owned by the Funds and in the custody of CBT, their custodian of assets.
 
 
 28
 C.R. 1416-19.
 
 II.
 THE 10b-5 CLAIM
 
 29
 Summary judgment is proper only if two conditions are met: The pleadings, depositions, etc., obtained in discovery must show that there is no disputed issue of material fact, and on the agreed facts the moving party must be entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c). The movant has the burden of showing there are no genuine factual issues, and evidence is construed in the manner most favorable to the opponent. Although the extent to which Arthur Young adhered to proper auditing procedures is clearly disputed, we agree with the district court that no genuine dispute exists as to any material fact relevant to the 10b-5 claim. Arthur Young acted without the quality of intent required for a violation. A brief review of the allegations and evidence submitted below will demonstrate this.
 
 
 30
 Arthur Young knew nothing of the connection between Burreson & Co. and the corporations whose securities the mutual funds complain the audit opinion induced them to buy, nor was Arthur Young aware that the mutual funds were disposed to purchase these securities. Directors of the mutual funds and the custodian of their assets assured Arthur Young that first trust deeds secured the Burreson debentures. There was no cause to suspect the internal controls of CBT. In the course of the audit Arthur Young physically inspected the Burreson and Oh Boy! securities in CBT's custody. In other words, the claim against Arthur Young rests on allegations that the audit was not sufficiently thorough. There is no suggestion that Arthur Young knew fraud was afoot or had any motive for not probing more deeply. The mutual funds argue, as they must, that Arthur Young's failure to discover the fraud nonetheless fell so far short of professional standards as to constitute reckless conduct.
 
 
 31
 This court has held, in response to the Supreme Court's decision in Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12, 96 S.Ct. 1375, 1381 n.12, 47 L.Ed.2d 668 (1976) (scienter required for Rule 10b-5 violation but the question whether recklessness suffices reserved), that reckless misrepresentation of the facts pertinent to a securities transaction will ground a rule 10b-5 claim. Nelson v. Serwold, 576 F.2d 1332, 1337 (9th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). What constitutes recklessness, however, is not a question to be answered by simple reference to tort doctrines. In analyzing section 10(b), its legislative history, and rule 10b-5, the Court in Hochfelder formulated the issue as whether Congress intended to create liability predicated on "a failure to exercise reasonable care" or to permit "good faith" as an "absolute defense." 425 U.S. at 200, 96 S.Ct. at 1384. The Court's answer: "There is no indication that Congress intended anyone to be made liable (under rule 10b-5) unless he acted other than in good faith. The catchall provision of § 10(b) should be interpreted no more broadly." Id. at 206, 96 S.Ct. at 1387. We find this language especially significant for cases that, like Hochfelder, grow out of injuries perhaps partly attributable to inadequate accounting performance. By referring to the good faith defense, the Court meant, we believe, to reinforce and clarify the distinction between ordinary malpractice resting on negligence, on the one hand, and fraud, on the other. We agree with the appellee that the issue before us is whether the mutual funds have alleged anything more than ordinary malpractice.
 
 
 32
 We think they have not. This conclusion draws support from the flexible duty standard employed by this circuit. See Spectrum Financial Companies v. Marconsult, Inc., 608 F.2d 377, 381 (9th Cir. 1979); Crocker-Citizens National Bank v. Control Metals Corp., 566 F.2d 631, 636 n.2 (9th Cir. 1977); White v. Abrams, 495 F.2d 724 (9th Cir. 1974). The scope of one's duty under rule 10b-5 is analyzed with reference to
 
 
 33
 the relationship of the defendant to the plaintiff, the defendant's access to the information as compared to the plaintiff's access, the benefit that the defendant derives from the relationship, the defendant's awareness of whether the plaintiff was relying upon their relationship in making his investment decisions and the defendant's activity in initiating the securities transaction in question.
 
 
 34
 Id. at 735-36 (citations omitted). All these factors suggest that the relationship of an auditor to the firm it audits creates a narrow duty of disclosure. The relationship itself is occasional. The auditor's access to information about the firm depends to a greater or lesser degree on the firm's producing documents under its control. The auditor's benefit from the relationship consists in a fee for professional services. While the auditor may know that persons dealing with the firm and the firm's own directors will rely in some ways on the audit opinion, rarely if ever can the firm itself be expected to base investment decisions on what an audit reveals. See Competitive Associates, Inc. v. Laventhol, Krekstein, Horwath & Horwath, 516 F.2d 811, 815 (2d Cir. 1975). Reckless disregard of this narrow duty is conduct of an extreme sort and should be found sparingly. To do otherwise would be to impose a more far-reaching duty than the facts of this case justify.[1]
 
 
 35
 Our recognition of the need for caution in characterizing Arthur Young's alleged auditing deficiencies is reinforced by a comparison of the Hochfelder facts with those before us. In Hochfelder the defendant accounting firm failed to discover that the president of a small brokerage, for which it performed the annual audits required by section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a), had permitted no one but himself to open mail addressed to the firm even if it arrived in his absence. Plaintiffs characterized the failure to discover this "mail rule" as negligence, specifically disclaiming any theory of intentional misfeasance. The Court found the allegations insufficient. In the present case the failure was also a failure to investigate and also occurred in the course of a normal audit. Here as in Hochfelder the scope of the auditor's duty was partly determined by federal statute: in Hochfelder by 15 U.S.C. § 78q(a), and in this case by 15 U.S.C. § 80a-33(b). SEC Release No. 118, 5 Fed.Sec.L.Rep. (CCH) P 72,14 0, at 62,296 and AICPA, Industry Audit Guide: Audits of Investment Companies 47 (1973) also are relevant to the scope of Arthur Young's duty. This duty was arguably more specific than was the auditor's duty in Hochfelder, for whereas Ernst & Ernst neglected to inquire into day-to-day procedures of the subject brokerage, Arthur Young allegedly failed to examine a statutorily required action on the part of plaintiffs' directors, as the Investment Company Act evidently contemplated that an auditor shall. See 15 U.S.C. § 80a-33(b). The greater specificity of Arthur Young's duty, however, does not imply that its breach was in bad faith or the result of recklessness. Even a custom or statutory directive that an auditor who accepts a particular sort of commission must perform a certain "ministerial" accounting task cannot ground the inference that corrupt motives underlie every failure to perform that task. We quite agree that the recklessness that rule 10b-5 requires must come "closer to being a lesser form of intent (to deceive) than merely a greater degree of ordinary negligence." Sanders v. John Nuveen & Co., 554 F.2d 790, 793 (7th Cir. 1977); cf. Lewelling v. First California Co., 564 F.2d 1277, 1281 n.6 (9th Cir. 1977) (scienter is absent whenever the party charged with liability was not aware of a fraudulent scheme) (dictum). At best only ordinary negligence is charged here.
 
 III.
 THE SECTION 34(b) CLAIM
 
 36
 The mutual funds have argued in their appeal that the summary judgment against them was improper in view of their claim under section 34(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-33(b). It is doubtful that this section implies a private cause of action. See Transamerica Mortgage Advisors, Inc. v. Lewis, --- u.s. ----, ----, N.13, 100 s.ct. 242, 248 n.13, 62 l.ed.2d 146 (1979) ("Congress amended the Investment Company Act in 1970 to create a narrowly circumscribed right of action for damages against investment advisers to registered investment companies" (emphasis added) ).
 
 
 37
 In any event, the issue was not adequately raised in the proceedings below and therefore is not before us. Michael-Regan Co. v. Lindell, 527 F.2d 653, 659-60 (9th Cir. 1975). At best, the mutual funds called attention to the claim only in a memorandum opposing Arthur Young's motion for summary judgment. The memorandum mentions section 34(b) in an argument disputing the preemption of the rule 10b-5 action by section 18 of the 1934 Act, 15 U.S.C. § 78r. No complaint relied on section 34(b), no findings with respect to the claim were made nor were any requested. No objection to the absence of any such findings was made nor did appellants mention the claim in their notice of appeal. Under these circumstances we decline to consider it here. See Babb v. Schmidt, 496 F.2d 957 (9th Cir. 1974).
 
 
 38
 Affirmed.
 
 
 
 *
 Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 There is considerable merit in the position taken by Judge Ferguson in his concurring opinion in Spectrum Financial Companies, supra, 608 F.2d 382-85 (Ferguson, J., concurring). A flexible duty standard that cannot include ordinary negligence within the circle of culpability resembles using a 36 inch ruler exclusively to measure distances never exceeding 24 inches