### In re APPLE COMPUTER SECURITIES LITIGATION.

#### Master File No. C 84–20148(A) RPA.

United States District Court, N.D. California.

Dec. 14, 1987.

As Corrected Dec. 18, 1987.

Sherrie R. Savett, Stephen D. Ramos, Jeanne A. Markey, Berger & Montague, P.C., Leonard Barrack, Gerald J. Rodos, Edward M. Gergosian, Barrack, Rodos & Bacine, Philadelphia, Pa., for Estelle B. Ellis.

Stuart H. Savett, David H. Weinstein, Barbara A. Podell, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for plaintiff Albert J. Whelen, Jr.

Joseph W. Cotchett, Susan Illston, Cotchett & Illston, Burlingame, Cal., for plaintiffs William H. Schneider and Charles and Jeanne Cohn.

M. Laurence Popofsky, Douglas M. Schwab, Paul W. Sugarman, Jonathan P. Hayden, Christopher M. Patti, Meryl Macklin, Carol P. Laplant, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants John Sculley, John Vennard, Delbert W. Yocam, Michael Muller, Wilfrid J. Houde, John D. Couch, Gene P. Carter, Kenneth R. Zerbe, Steven P. Jobs, A.C. Markkula, Jr., and Apple Computer, Inc.

Michael F. Perlis, Philip F. Atkins-Pattenson, Daniel Bernhard, Pettit & Martin, San Francisco, Cal., for defendants Dr. Henry E. Singleton, Philip S. Schlein, Arthur Rock, and Peter O. Crisp.

## ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO AMEND COMPLAINT

AGUILAR, District Judge.

### I. INTRODUCTION.

After a hiatus of several months digesting the Court's order denying plaintiffs' motion for reconsideration, defendants' have brought a motion for summary judgment against the three remaining actionable statements made by Apple officials. The basis for the motion, *inter alia*, is that defendants' lacked scienter within the meaning of the securities laws. Not to be left motionless, plaintiffs have filed a countermotion to amend the complaint. Plaintiffs seek to add three California causes of action to their complaint which would exactly track the federal § 10(b) and Rule 10b–5 claims. As explained below, the Court will grant the motion for summary judgment and thereby moot plaintiffs' motion to amend.

### II. FACTS.

The facts of this case have been detailed in a previous ruling of this Court. *See, e.g., Order Granting In Large Part Defendants' Motion for Summary Judgment* (April 30, 1987) (hereafter the "Order").[1] The net effect of the Order and the Court's subsequent ruling in response to a motion for reconsideration[2] was that the Court rejected 15 of the 18 statements

---

1. The Order was cosmetically revised for publication on October 19, 1987. *See Amended Order Granting In Large Part Defendants' Motion for Summary Judgment,* 672 F.Supp. 1552.

2. The order in response to the motion for reconsideration was filed on July 31, 1987. The order was untitled and hereafter will be referred to as the "Reconsideration Order."

which formed the basis of plaintiffs' case. The three remaining statements are Statements ## 5, 10, and 15. The Court did not dismiss these statements because on the record before it, and construing all facts and inferences from facts in the light most favorable to plaintiffs the non-moving parties, there were questions of material fact remaining.

Defendants now move for summary judgment on the three remaining statements arguing that plaintiffs have not put forth evidence raising a triable issue of material fact with respect to scienter. They also indirectly raise the issue of materiality again. They allege that the evidence they offer is new, was not put forward in the prior motions, or was not sufficiently highlighted in the prior motions.

## III. DISCUSSION.

### (A) Summary Judgment on the Issue of Materiality:

The Court's prior rulings intensely focused on the issue of materiality with respect to each of the statements in question. Although the present motion for summary judgment ostensibly raises the scienter aspect of the statements, defendants nevertheless again direct the Court's attention to the materiality question. Specifically, defendants raise questions about Statements ## 5 and 10.

### (i) *Materiality of Statement # 5 Revisited:*

 Statement # 5 was made in a press release in late November 1982 and relates to the Twiggy disc drive. The statement is as follows:

The Apple 871 Disk Drive [Twiggy] is the first high-density, double-sided disk drive mechanism to be built specifically for personal computer applications. It represents three years of research and development and has undergone extensive testing and design verification during the past year.

The full text of the press release in which Statement # 5 appeared was among the thousands of pages of documents submitted in connection with the prior summary judgment motion. On the basis of the parts of the press release that were put into issue before the Court, it appeared that Apple was representing that the Twiggy was a finished product. Indeed, the basis of the Court's denial of summary judgment on this statement vis-a-vis materiality was that "[t]he reasonable investor would infer from this that Twiggy was a product that was ready to perform." *Order* at 20.

After reviewing again the entire press release and receiving argument from the parties directed to that specific issue, the Court finds that it must amend the earlier decision with respect to the materiality of Statement # 5. The reason is simple. At the end of the press release, badly reproduced, is the following section:

*Price and Availability*

Unifile and Duofile will be available in Spring 1983 from all authorized Apple dealers in the United States, Canada, and Europe. Unifile will retail for under $1,000 and Duofile will sell for less than $1,700.

Defendants never made reference to this section of the press release during the motion for summary judgment. Of course, they could not anticipate everything, however, and the Court should have paid closer attention to the full text of the press release instead of relying on the segments argued by the parties. The above quote is an explicit announcement that Twiggy only would be available (in the worst case) six months hence. Furthermore, Twiggy was indeed shipped in the Spring of 1983 as promised. Granted, Twiggy did not do all that had been anticipated, but that is not the issue. The issue as framed in Statement # 5 is one of timing. Quite simply, having stated that the product would not be available for another six months, defendants did not project the misleading idea that Twiggy was ready to perform at the time the statement was made. Accordingly, the statement was not materially misleading and not actionable.

On the basis of this analysis, there is no need to reach the issue of scienter. However, even if scienter is reached there may

be no factual issue remaining. If the misleading aspect of the statement is that it gave the impression that Twiggy was ready to perform, and if defendants told the public that Twiggy would not be ready to perform until the Spring of 1983, then defendants could not have been reckless for they made precisely the type of disclosure about timing that one would require to avoid misleading the public. Regardless of the issue of scienter, however, the statement was not misleading and therefore not material.

### (ii) *Materiality Revisited Vis-a-Vis Statement #10:*

■ A full discussion of Statement #10 is found in the Order at pp. 27–29. The text of the statement appeared in a *Wall Street Journal* article on April 13, 1983. The words are those of Apple marketing manager Barry Smith and they are interspersed at various parts of the article:

> [T]he Company has increased by 50% its estimate of how many machines it should make by the end of the 1984 first half.

> What we're finding is the reception of Lisa has been very strong.

> We find people willing to put down $10,-000 without blinking an eye.

> [M]ore companies are willing to commit themselves to larger orders than Apple had expected. They're talking larger numbers for their first order, and a quicker reorder.

The materially misleading aspect of these representations is that the final two sentences give the impression that the pre-shipment orders for Lisa were *binding* orders, when in fact the orders were revocable without penalty any time prior to the shipment of the computer. In the Order, the Court indicated that "[i]t is conceivable that investors may have been aware that the commitments referred to in Statement #10 were non-binding, but defendants have not made such an assertion." *Order* at 29. If investors were aware that the orders were non-binding, then they would not have been misled, but without that information before it, the Court had to interpret the facts in the light most favorable to the non-movants and deny summary judgment on the issue of materiality.

Apple has now come forward with new evidence to establish that it was a generally known fact in the industry that orders for computers are "soft" (i.e., not binding) as a matter of course. The evidence Apple offers in support of this position are four declarations from industry experts.

The first expert, Stewart Alsop, states that he can recall reading the *Wall Street Journal* article in which Statement #10 appeared. Alsop states that his understanding at the time and at the present is that the Lisa orders to which Mr. Smith referred were not firm. Indeed, Alsop states that "in 1983, prior to shipment virtually all orders in the computer industry were cancellable at will by the buyer." According to Alsop, Mr. Smith used the term "order" in the typical manner for the industry referring to non-binding commitments to purchase computer products.

The second expert, Gregory Kelsey, essentially repeats the declaration of Alsop. The third expert, John Michael Murphy, also states that he and the industry understood that Apple's backlog was soft. The same is true of the fourth expert, Ulric Weil. Each of these experts is indeed an expert, an individual who is familiar with the market and who actually followed Apple stock during the period in question. At least two of these experts specialized in Apple stock and wrote reports and newsletters to investors on Apple's activities, as well as the activities and prospects of numerous other high technology computer firms.

In addition to these declarations, Apple has supplied an investors report prepared by a partnership entitled "Montgomery Securities" on June 22, 1983. In two parts of the sixty plus page report to investors, the authors explicitly state that the backlog for Lisa is "soft" and that all Apple orders are "subject to initial shipment evaluation and potential cancellation." This evidence further supports the declarations of the experts because it shows that investors were told that Lisa orders were "soft." In other words, following the fraud on the market

theory, the price of the stock would have reflected the fact that the orders were "not firm." On this basis, disclosure by Apple, and Mr. Smith in particular, of the fact that the orders for Lisa were "soft" would not have altered the total mix of information already available on the market. A disclosure by Smith that the orders were cancellable at will prior to shipment would only have reinforced information already known (as declared by the experts) and available (as demonstrated by the Montgomery Securities' newsletter) on the market.

In terms of the summary judgment balance, the evidence offered by Apple is sufficient to meet its burden of production as the moving party to show that there is no triable issue of material fact. Under *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986), the burden is now on plaintiffs to come forward with evidentiary material raising an issue of fact about which a rational jury could differ.

Although plaintiffs do seem to recognize that despite Apple's description of this motion as being predicated on lack of scienter, the real issue (at least vis-a-vis Statements ## 5 and 10) is materiality. Yet they offer little evidence to counter Apple's motion, instead stating that everything they have written before is incorporated by reference. The sole evidence they point to in refuting defendants' experts is a statement made in a May 1983 newsletter prepared by Gregory Kelsey (one of Apple's experts) which uses the words "buying" and "ordering" interchangeably. This is slim evidence. At best, it suggests some ambiguity, but it does not raise a triable issue of fact in the face of Apple's presentation. More likely, it reflects a technical inaccuracy by the newsletter, or it may mean exactly what it says, i.e., that some people are actually buying cautiously at first before they order in large quantities later on.

To sum up, defendants have come forward with a strong evidentiary showing as to the custom in the industry and have given a specific, explicit example of the manner in which the industry was aware of the potential ephemerality of the Lisa orders. On the other hand, plaintiffs have not come forward to take up their burden of production to demonstrate a triable issue of material fact. Under the recent Supreme Court cases, especially *Celotex* and *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), summary judgment is now appropriate on the issue of materiality of Statement # 10.

(B) Summary Judgment With Respect to Scienter:

The Order contained a lengthy discussion of scienter. That part of the Order discussing the legal standards with regard to scienter, specifically pp. 40–42, is incorporated herein by reference. Applying those standards, the Court now will examine Statements ## 10 and 15.

(i) *Scienter and Statement # 10:*

■ As with Statement # 5, the issue of scienter need not be reached if Statement # 10 is not materially misleading. However, based on evidence presented in this motion the Court concludes that dismissal of Statement # 10 also is appropriate due to lack of a showing of scienter.

Barry Smith was the individual who uttered Statement # 10. He did so during the course of an interview; thus it was not a preplanned response which others at Apple directly participated in formulating. Any scienter connected with the statement could be attributed to Apple, but only through the person of Smith. Hence, assuming materiality for the sake of argument, the question is whether plaintiffs have made some showing that Smith intentionally or recklessly misled investors.

To begin with, Apple has offered the declaration of Mr. Smith. Smith states that he did not intend to imply that the orders for Lisa were firm orders. His intent was to emphasize that despite the $10,000 pricetag (which many analysts predicted would be Lisa's biggest stumbling block), many people were willing to file orders for the new computer. This is a plausible explanation and makes sense in the context of the *Wall Street Journal* article which focused heavily on the high price of Lisa (one can assume that issue of

price was raised in the interview with Smith as well).

In connection with Smith's declaration, Apple makes the following argument. If Smith did not intentionally seek to mislead investors and did not knowingly do so (no evidence has been offered to prove the contrary), then the only way that plaintiffs can show scienter is by showing that the statement was made with reckless disregard for its misleading character. In other words, defendants "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although they could have done so without extraordinary effort." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (citations omitted).

Plaintiffs have introduced no evidence in this motion to show that Smith had reasonable grounds to believe that his statement about the quality of the orders was misleading. If the standard in the industry was that orders was cancellable at will prior to shipment, Smith would have no reasonable basis to be concerned about misleading investors. Plaintiffs have offered no response to the declarations of the market analysts who state that the industry practice was "soft." Plaintiffs have not offered the declaration of a single individual who allegedly was misled by Smith's statement. Nor have plaintiffs offered any counter-declarations suggesting that the understanding in the industry was anything other than that orders for Lisa were "soft" as with other computer products.

Under Rule 56 of the Federal Rules of Civil Procedure and recent Supreme Court opinions, it is not enough for plaintiffs to continue to rely upon the fact that Apple officials sold some of their stock during the class period. In fact, Mr. Smith is not a defendant in this action, nor is there any allegation that he owned and sold Apple stock during the class period. Thus, there is nothing to support plaintiffs' allegations of scienter. Accordingly, the Court concludes that not only was Statement # 10 not material, but also plaintiffs have not shouldered their burden of making a prima facie case that Statement # 10 was made with the scienter necessary to make it actionable under the federal securities laws. Accordingly, dismissal is proper on both grounds.

### (ii) *Scienter Vis-A-Vis Statement # 15:*

Statement # 15 has proven to be somewhat elusive. The discussion of the statement in the Order is found at pp. 32–35. The statement was reconsidered in the Reconsideration Order at pp. 5–6. The statement is a five sentence blurb which appeared in a Reuters news service financial report in June of 1983. Apple spokesman Stanley DeVaughn allegedly stated:

> Apple began volume shipments June One [1983] of its new $10,000 Lisa Computer. "The product has been well-received and shipments are running ahead of expectations."

Originally, the Court found that the statement was not material because plaintiffs had not shown that it was a misstatement to suggest that expectations had been exceeded. On reconsideration, the Court took closer note of the first sentence of the blurb and concluded that in fact it was inaccurate because volume shipment did not begin until later in the month of June. Because of this inaccuracy, the statement was misleading.

Now, for the first time, Apple has submitted the declaration of Stanley DeVaughn, who at the time of his utterance of part of Statement # 15 was Apple's manager of investor and press relations. Mr. DeVaughn does not appear to recall having had an interview with a Reuters reporter. Nor does he recall having made either of the statements attributed to him. If he did make the statements, DeVaughn states that they were an honest mistake not intended to mislead investors. Indeed, he points out that it was an objectively verifiable fact whether shipments of Lisa began in volume of June 1, 1983, and he would have no incentive to lie about such a fact.

DeVaughn states that he is able to identify the clipping which forms Statement # 15 as having been sent to Apple by its press clipping service. Apple did not sub-

scribe to the Reuters financial service. Documents received by means of the press clipping service were received approximately six weeks after their publication. Given a publication date of June 13, 1983, Apple would not have received its copy of the clipping until late July or early August 1983, well after Apple in fact had initiated volume shipments of Lisa. This is significant in terms of materiality because by the time DeVaughn and Apple learned of the statement, it would have been too late to alter the total mix of information on the market by making a correctional statement to the public. Nevertheless, despite the absence of any continuing duty to correct, Apple officials still must face the fact that their spokesman issued a statement that was flatly wrong—a statement that investors may have relied upon.

As in the case of Statement # 10, only one individual can be directly charged with scienter with respect to Statement # 15. Like Barry Smith in his utterance of Statement # 10, Stanley DeVaughn apparently made Statement # 15 in the context of an interview. As such, the scienter behind the statement cannot be attributed directly to any of the defendants. If there was scienter, it had to be in the mind of DeVaughn which then could be attributed to the corporation and its executives through the controlling person doctrine. Indeed, all defendants have declared that they did not know of the existence of Statement # 15 until this litigation arose.

Like Barry Smith, Stanley DeVaughn is not a defendant in this litigation. More importantly, as in the case of Mr. Smith, plaintiffs have made no showing of knowing or intentional conduct by DeVaughn. Mr. DeVaughn is not accused of selling any Apple stock during the class period, nor have plaintiffs demonstrated that DeVaughn had any particular knowledge or state of mind at the time of the interview. In the face of DeVaughn's declaration and in the absence of any evidence showing knowledge or intent to deceive, the burden is on plaintiffs' to show some facts demonstrating that DeVaughn acted in bad faith. Plaintiffs have not done so.

The only way that the statement presents a triable issue is if DeVaughn acted recklessly in disclosing information to the public that was factually inaccurate. Under Ninth Circuit standards, Apple could be liable for DeVaughn's statement if DeVaughn had a reasonable basis to know that he was uttering a misstatement—regardless of DeVaughn's mental state. One could argue that DeVaughn should have known that his June 1 shipment date was incorrect. After all, he was a spokesman for Apple. Plaintiffs do not even argue this; they have nothing to say about the scienter argument.

The Ninth Circuit has said that recklessness is closer to "a lesser form of intent" than "merely a greater degree of ordinary negligence." *Vucinich v. Paine, Webber, Jackson, & Curtis, Inc.*, 739 F.2d 1434, 1435 (9th Cir.1984), *quoting Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1341 (9th Cir.1980). Plaintiffs have presented no evidence whatsoever going to show anything beyond mere negligence on the part of DeVaughn. As the Ninth Circuit stated in *Vucinich*, "[a] plaintiff ... must offer more than conclusory allegations, and if the defendant presents affidavits or other evidence establishing a lack of scienter, the plaintiff must come forward with some affirmative showing." 739 F.2d at 1436. This is precisely the situation here. Apple has offered DeVaughn's declaration contending good faith and lack of scienter. Plaintiffs have not responded in any fashion with an affirmative showing raising a triable factual issue. Therefore, summary judgment is proper as against Statement # 15.

(C) Plaintiffs' Motion to Amend the Complaint:

On the basis of the above reasoning and conclusions, it is unnecessary to reach plaintiffs' motion to amend the complaint. With the dismissal of all of the statements, the federal claim is extinguished. Thus, there is no basis to exercise pendent jurisdiction over the proposed state law claims. The parties report that plaintiffs continue to have two related actions on file in state court which parallel this litigation. Plain-

tiffs may pursue their state law claims in that forum, if appropriate.

## IV. CONCLUSION:

The time has come to bring this litigation to a close. All that remains of plaintiffs' case are Statements ## 5, 10, and 15. As described above, Statement # 5 is not materially misleading. Statement # 10 is both not materially misleading and has not been shown to have been made with the necessary scienter. Finally, plaintiffs have made no showing of scienter with respect to Statement # 15. Having dismissed these claims, federal jurisdiction no longer exists; hence, the motion to amend the complaint need not be reached.

Good cause appearing therefor, defendants' motion for summary judgment is hereby granted. Plaintiffs' motion to amend the complaint is hereby denied.

IT IS SO ORDERED.