Argued October 7, 1964, reversed February 10, 1965

# TARSIA v. NICK'S LAUNDRY & LINEN SUPPLY CO. ET AL

399 P. 2d 28

*James J. Damis,* Portland, argued the cause for

appellants. On the brief were Damis & Damis, Portland.

*Leo S. Meysing,* Portland, argued the cause for respondent. On the brief were Brune, Meysing & Meredith, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and DENECKE, Justices.

PERRY, J.

The plaintiff brought this action under the provisions of ORS 59.250 to recover from the defendants the sum of $700, paid by plaintiff to defendants for the purchase of shares of stock in the defendant corporation.

The plaintiff prevailed in the trial court and the defendants appeal.

There is very little dispute on the facts. All of the issued stock of the corporation at its inception was held by the defendant Nick Rossos and his wife, and Joe Cancilla and his wife. It is admitted that the stock of the defendant corporation had not been registered with the corporation commissioner for the purpose of sale and that the stock sold plaintiff was unissued stock of the corporation. The defendant Nick Rossos, secretary of the corporation, in the early summer of 1960 approached Mr. Fouch, superintendent of the laundry, and stated "that he was going to be selling some stock in the company and would [he] be interested in purchasing any of it." Mr. Fouch declined the offer. In August, 1960, Rossos met with Bryant Allison, a company employee, and the plaintiff, who had been with the company from its inception as a truck driver. After explaining that the corporation

was having financial difficulties, Rossos offered to sell unissued shares of stock of the corporation at $100 per share. Allison and plaintiff were without money to purchase the stock outright so payment was to be effected by withholding from the salary of each the sum of $25 per week. In September, 1960, Allison left the employ of the corporation and the defendant Rossos returned to him the money withheld (less than $100). Plaintiff testified that he could stop purchasing shares at any time. There was withheld from plaintiff's weekly salary the sum of $700, and, after the corporation was in some manner liquidated, he was delivered 7 shares of stock.

The evidence discloses that the above transactions relating to stock sales and offers were all that were made by the defendants.

The defendants contend that, since the relevant evidence is undisputed, all the facts disclose that the sale to the plaintiff is an "isolated transaction," expressly excluded from the Oregon Securities Law.

ORS 59.120 provides:

"* * * the Oregon Securities Law shall not apply to the sale of any security in any of the following transactions:

"* * * * *

"(2) An isolated transaction in which any security is bought, sold, offered for sale, subscription or delivery by the owner, or by a corporation of its unissued stock, or his or its representative for the owner's or the corporation's account, the purchase, sale or offer for sale, subscription or delivery not being made in the course of repeated and successive transactions of a like character by the owner or corporation or on his or its accounts by the representative, and the owner, corporation or representative not being the underwriter of the security."

In *Koeneke, Hart v. B & O Lbr. Co.*, 224 Or 241, 243, 356 P2d 149, in considering this statute, we stated:

"In defining an 'isolated transaction' the statute provides by way of comparison that a single transaction shall be distinct from a course of conduct which discloses 'repeated [and] successive transactions of like character.' "

In the case of *Kneeland v. Emerton*, 280 Mass 371, 388, 183 NE 155, 87 ALR 1, 14, the Massachusetts court, in construing an almost identical provision, stated the same thought as follows:

"* * * The words 'repeated and successive' are used by way of contrast to the word 'isolated' employed earlier in the same sentence. * * *"

It then appears a sale generally prohibited by the act is authorized as an "isolated" sale when the intended meaning of the words "repeated and successive transactions of like character" has been ascertained, since an "isolated" sale is excluded as antonymous to "repeated and successive" sales.

The legislature, in using "isolated," "repeated and successive," intended these words to be understood as they are comprehended through common usage.

The word "isolated" means "placed alone or apart;" the word "repeated" means "occurring again and again;" and the word "successive" means "following one upon another." Webster's Third New International Dictionary.

It, therefore, appears that the legislative intent in using the words "repeated" and "successive" in the conjunctive was for the purpose of conveying the thought of a series of sales.

"Series" is defined as "a group of usu. three or more things or events standing or succeeding in order

and having like relationship to each other." Webster's Third New International Dictionary.

Also, ORS 59.120, by the use of the words "transactions of a like character," conveys the thought that in judging the series of acts, the acts shall be of the same kind.

■ In our opinion, this statute relating to an isolated transaction permits an owner or a corporation with unissued stock to make at least two sales of stock to two different individuals within a reasonable period of time before there is evidence upon which to make a comparison for the purpose of determining whether or not there has been sufficient violation of the privilege granted.

■■ While the burden of proof is upon the owner or corporation to establish that the transaction falls within the exemption, the testimony of the officers of the corporation is positive to the effect that the only sales, if the transaction with Allison can be considered a sale, were those to Allison and the plaintiff. Nor is there any other evidence in the record from which a contrary conclusion can be drawn.

We are, therefore, of the opinion that the judgment of the trial court must be reversed and judgment entered for the defendants.

O'CONNELL, J., dissenting.

I am of the opinion that the trial court was right in holding that the sale of stock to plaintiff was not an isolated transaction within the meaning of ORS 59.120.

I understand the majority opinion to hold that more than two sales are necessary to constitute "repeated and successive" transactions. As I read the record in

this case there were more than two sales within the meaning of ORS 59.120 (2) as read with ORS 59.030 (1). Under the latter sections a sale includes every "attempt to dispose of a security or interest in a security for consideration." The record discloses one attempted sale and two completed sales. Thus there were three sales. They were all made or attempted to be made in succession for the same general purpose and all were made in a short period of time. The sales were, therefore, "repeated and successive."[1]

The three transactions, taken singly or compositely, involve the payment of a relatively small amount of money and the seller's purpose in making the sales appears to be free from any misrepresentation. But the Oregon Securities Law makes such considerations irrelevant in the proscription against the sale of unregistered securities. Perhaps the statutes should make allowances for transactions such as are involved here but they do not and the court must apply the statute as it finds it.

I would affirm the judgment.

---

[1] "We think that two sales of securities, made one after the other within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as to form no part of a single plan, would be 'repeated and successive transactions.' " Kneeland v. Emerton, 280 Mass 371, 389, 183 NE 155, 163, 87 ALR 1 (1932), quoted with approval in Anderson v. Mikel Drilling Co., 257 Minn 487, 102 NW2d 293, 297-98 (1960) and Gales v. Weldon, 282 SW2d 522, 526 (Mo 1955).